**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

NEIL MEHTA,

        Plaintiff,

v.

ANGELL ENERGY, et al.,

        Defendants.

Civil Action No. 18-2319 (MAS) (LHG)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

    This matter comes before the Court upon Defendants Chesapeake Trading Group, LLC ("Chesapeake"), Pegasus Energy Futures, LLC ("Pegasus"), Apollo Energy Futures, LLC ("Apollo"), Diversified Trading Company, LLC ("Diversified"), and Timothy Krieger's (collectively, "Defendants") Motion to Transfer, pursuant to 28 U.S.C. § 1404(a) (ECF No. 6). Plaintiff Neil Mehta ("Plaintiff") opposed (ECF No. 15), and Defendants replied (ECF No. 17). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, Defendants' Motion to Transfer is granted.

I.  **BACKGROUND**[1]

This action arises out of Plaintiff's claims for unpaid wages and bonuses against Angell Energy and Chesapeake.[2] (Amended Complaint ("Am. Compl.") ¶¶ 87-98, ECF No. 23.) In March 2014, Twin Cities Power, LLC ("Twin Cities Power") hired Plaintiff to work as an energy futures trader in the company's East Windsor, New Jersey office. (*Id.* ¶ 24.) Twin Cities Power and Plaintiff entered into an employment agreement (the "Twin Cities Agreement"). (Defs.' Dismissal Br., Ex. A ("Twin Cities Agreement"), ECF No. 5-3.) The Twin Cities Agreement contained a forum selection clause stating:

> The laws of the State of Minnesota will govern the validity, construction and performance of this Agreement. Any legal proceeding related to this Agreement will be brought in an appropriate Minnesota court, and both the COMPANY and the EMPLOYEE hereby consent to the exclusive jurisdiction of that court for this purpose.[3]

(*Id.* § 10(e).)

In June 2015, Krieger sold Twin Cities Power to Angell Energy, a company owned by Michael Angell. (Am. Compl. ¶¶ 28, 29.) The purchase agreement stipulated that Angell Energy would "retain the employment of all of the [Twin Cities Power] employees . . . by assuming their respective employment agreements." (Defs.' Mot. to Dismiss, Ex. B "Twin Cities Power Agreement", ECF No. 5-4.) As part of the sale, Angell Energy "authorized [Apollo], a management services company solely owned by [Krieger] . . . to manage and administer Angell

---

[1] In ruling on a motion to transfer, the Court "accept[s] as true all of the allegations in the complaint, unless those allegations are contradicted by the defendants' affidavits." *Bockman v. First Am. Mktg. Corp.*, 459 F. App'x 157, 158 n.1 (3d Cir. 2012).

[2] In the Amended Complaint, Plaintiff named Angell Energy as a defendant. The Court, however, previously dismissed without prejudice Plaintiff's claims against Angell Energy pursuant to Federal Rule of Civil Procedure 4(m). (*See* Order, ECF No. 28.)

[3] In the Twin Cities Agreement, COMPANY and EMPLOYEE are defined terms referring to Twin Cities Power and Plaintiff, respectively. (*See* Twin Cities Employment Agreement, § 10(e).)

Energy's energy future trading business." (Am. Compl. ¶ 31.) While working for Angell Energy, Plaintiff earned a $375,000 trading bonus. (Id. ¶ 43.) Plaintiff was not paid this bonus and he was also not paid two weeks of salary earned during May 2016. (Id. ¶ 44.)

"In May 2016, [Krieger] shut down Angell Energy and replaced it with [Chesapeake,]" a company also solely owned by Krieger. (Id. ¶¶ 45-46.) Krieger offered to hire Plaintiff as an energy trader and offered a signing bonus to partially pay for an unpaid bonus owed to Plaintiff by Angell Energy. (Id. ¶ 49.) Chesapeake and Plaintiff entered into an employment agreement (the "Chesapeake Agreement"). (Defs.' Mot. to Dismiss, Ex. E, ECF 5-7.) The Chesapeake Agreement contained a forum selection clause identical to the forum selection clause found in the Twin Cities Agreement.[4] (Compare id. § 10(e), with Twin Cities Agreement § 10(e).) At the time Chesapeake was shut down, Chesapeake owed Plaintiff 30 days of salary and approximately $40,000 in unpaid trading bonuses. (Am. Compl. ¶ 60.)

In July 2017, Krieger shut down Chesapeake and replaced it with Pegasus. (Id. ¶ 59.) Krieger avers that in July 2017, Michael Tufte was the owner of Pegasus, and that Krieger did not become an owner of Pegasus until October 2017. (Defs.' Mot. to Dismiss, Krieger Decl. ¶ 19, ECF No. 5-2.)[5] Pegasus offered Plaintiff a trading position, however, Plaintiff declined because the pattern of opening and closing companies caused him to suspect fraudulent practices. (Am. Compl. ¶¶ 75-78.)

On February 19, 2018, Plaintiff initiated this matter by filing a complaint against Defendants and asserting four counts for unpaid wages and bonuses earned while working for

---

[4] In the Chesapeake Agreement, COMPANY refers to Chesapeake. (See Chesapeake Agreement, § 10(e).) Because the forum selection clauses in the Twin Cities Agreement and Chesapeake Agreement are identical, for clarity, the Court refers to the forum selection clause in the singular.

[5] Krieger submitted a Declaration in support of Defendants' Motion to Dismiss and Motion to Transfer. (See Defs.' Transfer Br. 3, ECF No. 6-1.)

Angell Energy and Chesapeake. (*See generally* Compl., ECF No. 1.) On April 24, 2018, Defendants filed a Motion to Dismiss (Defs.' Mot. to Dismiss, ECF No. 5) and a Motion to Transfer (Defs.' Mot. to Transfer, ECF No. 6). On June 5, 2018, Plaintiff opposed Defendants' Motion to Dismiss. (Pl.'s Dismissal Opp'n Br., ECF No. 14), and on June 6, 2018, Plaintiff opposed Defendants' Motion to Transfer (Pl.'s Opp'n Br., ECF No. 15).

On August 8, 2018, the Court issued an Order to Show Cause requiring Plaintiff to establish the Court's subject matter jurisdiction (the "August Order"). (Order ("August Order"), ECF No. 22.) Plaintiff's Complaint failed to properly invoke the Court's jurisdiction because Plaintiff's factual allegations regarding the citizenship of Chesapeake, Pegasus, Apollo, and Diversified utilized the legal standard for corporations instead of limited liability companies. (*Id.*) The Court, accordingly, ordered Plaintiff to properly set forth the citizenship of Chesapeake, Pegasus, Apollo, and Diversified using the correct legal standard. (*Id.*)

On August 24, 2018, Plaintiff filed an Amended Complaint in response to the August Order, alleging: Plaintiff is a resident of Edison, New Jersey; Krieger is a resident of Prior Lake, Minnesota; and Diversified, Chesapeake, Pegasus, and Apollo are all limited liability companies and their membership is such that they are citizens of Minnesota. (*See* Am. Compl. ¶¶ 1, 2, 3, 9, 11, 14, 17.) Because Plaintiff properly alleged the citizenship of each defendant and established complete diversity, the Court deemed the Amended Complaint the operative complaint and reinstated the instant motions. (Feb. 19, 2019 Order, ECF No. 27.)

Plaintiff brings one count against Angell Energy alleging it owes him $328,000 comprised of a trading bonus and two weeks salary. (Am. Compl. ¶¶ 87-92.) Plaintiff also asserts one count against Chesapeake alleging it owes him $60,000 comprised of a trading bonus, fifteen days of salary, and fifteen days of paid time off. (*Id.* ¶¶ 93-98.) Plaintiff brings one count of Successor

4

Liability against Chesapeake and Pegasus. (*Id.* ¶¶ 99-111.) Plaintiff also seeks to pierce the corporate veil against all Defendants. (*Id.* ¶¶ 112-21.)

On August 1, 2019, Plaintiff submitted correspondence requesting that the Court enter an adverse inference against Defendants and that the Court not consider Krieger's Declaration. (Pl.'s Correspondence 2, ECF No. 29.) Plaintiff states that during a deposition related to a bankruptcy action pending in the United States Bankruptcy Court for the District of Minnesota, Krieger "was presented with his Declaration in this matter and refused to answer questions regarding the declaration, instead invoking his Fifth Amendment right against self-incrimination." (*Id.* at 2-3.) Plaintiff submitted the transcript of the deposition along with an adversary complaint filed in a separate bankruptcy action involving Krieger, Diversified, Apollo, and Chesapeake. (*Id.*, Exs. A, B, ECF Nos. 29-1 to -2.)

On August 9, 2019, Defendants filed correspondence objecting to Plaintiff's correspondence. (Defs.' Correspondence, ECF No. 32.) Defendants contend that Plaintiff's correspondence amounts to a Sur-Reply filed without leave in violation of the Local Civil Rules. (*Id.* at 1.) Defendants also assert that if the Court should consider the merits of Plaintiff's request, Plaintiff's request is unsupported and adverse inferences are disfavored. (*Id.* at 2.)

Plaintiff's Correspondence and exhibits are more akin to the submission of supplemental authority than to a Sur-Reply. Thus, they are not subject to being disregarded simply because Plaintiff did not comply with the Local Civil Rules. Nevertheless, Plaintiff provided the Court with no authority to support the request that an adverse inference be granted in this matter because Krieger invoked his Fifth Amendment rights in another matter. While the invocation of a party's Fifth Amendment rights need not be "costless," "the detriment to the party asserting it should be no more than is necessary to prevent unfair and unnecessary prejudice to the other side." *Adkins*

5

*v. Sogliuzzo*, 625 F. App'x 565, 572 (3d Cir. 2015). Here, Plaintiff has not established how Krieger's invocation of his Fifth Amendment right in a separate proceeding prejudices Plaintiff in this matter. Similarly, the unproven allegations of a complaint filed in a separate action have little bearing on the Court's adjudication of the instant motion. The Court, accordingly, denies Plaintiff's request for an adverse inference and will not consider the allegations in the adversary complaint.

## II. LEGAL STANDARD

The federal venue statute, 28 U.S.C. § 1404(a) ("Section 1404"), provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The movant bears the burden to establish the need for transfer. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

When deciding a transfer motion pursuant to Section 1404, the court must "consider . . . the three [factors] enumerated under the statute—convenience of the parties, convenience of the witnesses, and the interests of justice—along with all other relevant private and public factors, including the plaintiff's choice of forum and the local interest in deciding local controversies close to home." *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 57 (3d Cir. 2018). As a threshold matter, the court must determine whether the proposed transferee district is one the matter "might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a); *see also Teva Pharms. USA, Inc. v. Sandoz Inc.*, No. 17-275, 2017 WL 2269979, at *4 (D.N.J. May 23, 2017); *Garcia v. Chrysler Grp. LLC*, No. 12-1797, 2016 WL 5422018, at *3 (D.N.J. Sept. 27, 2016).

"In the typical case . . . , a district court considering a [Section 1404] motion must evaluate both the convenience of the parties and various public-interest considerations." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 62 (2013). When all of the parties are bound by a valid forum selection clause, however, the analysis changes, and a court must "adjust its usual [Section] 1404(a) analysis in three ways." *Alt. Marine Constr. Co.*, 571 U.S. 49, 63 (2013); *see Bella & Rosie Rock, LLC v. We Rock the Spectrum, LLC*, No. 17-3628, 2018 WL 844398, at *6 (D.N.J. Feb. 13, 2018).

First, the plaintiff's choice of forum merits no weight, and instead, the plaintiff bears the burden of establishing that transfer to the agreed-upon forum would be unwarranted. *See id.* Second, the parties waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. *See id.* Thus, the Court must deem the private interest factors to weigh entirely in favor of the preselected forum. *See id.* Third, when a party disregards its contractual obligation under the forum selection clause, a transfer of venue pursuant to Section 1404(a) "will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations." *Spy Phone Labs LLC v. Google, Inc.*, No. 14-6565, 2015 WL 4773159, at *2 (D.N.J. Aug. 13, 2015) (quoting *Alt. Marine Constr. Co.*, 571 U.S. at 64).

"[A] proper application of [Section] 1404(a) requires that a forum-selection clause be given controlling weight in all but the most exceptional cases." *Atl. Marine*, 571 U.S. at 59-60 (quotation marks and citation omitted). This altered analysis pursuant to "*Atlantic Marine* applies only to parties who agreed to a forum-selection clause[,]" because "a forum-selection clause 'represents the parties' agreement as to the most proper forum' and was 'bargained for by the parties.'" *In re:*

7

*Howmedica Osteonics Corp*, 867 F.3d 390 (3d Cir. 2017), *cert. denied sub nom.*, *Nordyke v. Howmedica Osteonics Corp.*, 138 S. Ct. 1288 (2018) (quoting *Atl. Marine*, 134 S. Ct. at 581).

## III. DISCUSSION

Defendants argue that Plaintiff's claims arise from the Twin Cities Agreement and Chesapeake Agreement, and both agreements contained a forum selection clause identifying any appropriate court in Minnesota as the forum for any dispute relating to the agreements. (Defs.' Transfer Br. 1, ECF No. 6-1.) Defendants, accordingly, move to transfer this matter to the District of Minnesota. (Defs.' Mot. to Transfer, ECF No. 6.)

For the Court to grant Defendants' Motion, the Court must consider (1) whether this matter could have been brought in the District of Minnesota, (2) whether there is a valid forum selection clause applicable to all parties, and (3) whether the public interest factors weigh in favor of transfer. As more fully explained below, the sum of its analysis results in the Court finding that this matter should be transferred to the District of Minnesota.

### A. The District of Minnesota is a District Where This Matter Might Have Been Brought

The proposed transferee district is one where the matter might have been brought when the proposed transferee district has: "(1) subject matter jurisdiction over the claims; (2) personal jurisdiction over the parties; and (3) is a proper venue [under 28 U.S.C. § 1391(b) ("Section 1391")]." *Teva Pharms. USA, Inc.*, 2017 WL 2269979, at *13 (quoting *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3d Cir. 1970)). Section 1391 provides that a district court is a proper venue if (1) "all defendants are residents of the State in which the district is located;" (2) "a substantial part of the events or omissions giving rise to the claim occurred" in the district, or "a substantial part of property that is the subject of the action is situated" in the district; or (3) "if there is no district in which an action may otherwise be brought as provided in this section, any

8

judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b).

Plaintiff could have brought the instant action in the District of Minnesota. The Minnesota District Court will have subject matter jurisdiction over this matter because the Court has already satisfied itself that it has subject matter jurisdiction pursuant to 28 U.S.C. 1331(a)(1), and nothing will change that analysis upon transfer to the District of Minnesota. (*See* Feb. 19, 2019 Order.) Moreover, because Plaintiff alleges that that Krieger, Diversified, Chesapeake, Pegasus, and Apollo all reside in or are citizens of Minnesota (Am. Compl. ¶¶ 2, 3, 11, 14, 17), it appears the District Court for the District of Minnesota will have personal jurisdiction over Defendants. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924, (2011). The District of Minnesota is a proper venue for this matter because each defendant is a resident of Minnesota. *See* 28 U.S.C. § 1391(b)(1). The Court, accordingly, concludes that the District of Minnesota is a district in which this matter could have been brought.

**B. The Forum Selection Clause Applies to Defendants**

Defendants and Plaintiff argue that the Court should apply the four-step inquiry set forth in *In re: Howmedica Osteonics Corp*, 867 F.3d 390 (3d Cir. 2017), *cert. denied sub nom.*, *Nordyke v. Howmedica Osteonics Corp.*, 138 S. Ct. 1288 (2018). (Defs.' Transfer Br. 10-13; Pl.'s Opp'n Br. 28-32.) The parties, however, overlook that in *In re: Howmedica*, the Third Circuit applied that four-step inquiry because it determined that the "closely related parties doctrine" was inapplicable because enforcement of the forum-selection clauses was not foreseeable by three of the non-signatory parties. *See id.* at 407 n.13. Additionally, the parties in the instant matter did not have the benefit of the Third Circuit's opinion in *In re McGraw-Hill Global Education Holdings LLC*, which confirmed that "[u]nder traditional principles of contract law, non-

signatories may be bound by a forum selection clause if they are intended third-party beneficiaries of the contract, or if they are closely related parties." 909 F.3d 48, 59 (3d Cir. 2018). The Third Circuit further clarified that *In re: Howmedica* analyzed "how forum selection clauses affect the § 1404(a) transfer analysis where the case involves both 'contracting parties,' i.e., those bound by a forum selection clause and thus subject to the presumption of *Atlantic Marine*, and 'non-contracting parties,' i.e., those not bound by a forum selection clause and whose private interests must still be considered." *Id.* at 69-70.

Given the allegations and arguments before the Court, the Court will consider the three issues the Third Circuit considered in *In re: McGraw Hill* to determine whether the forum selection clauses in the Twin Cities Agreement and Chesapeake Agreement apply to Pegasus, Apollo, and Diversified (collectively, "Non-Signatory Defendants") and whether transfer is appropriate. First, the Court will consider whether the Non-Signatory Defendants are bound by the terms of the Twin Cities Agreement and Chesapeake Agreement. *Id.* at 59. Second, the Court will consider whether the enforcement of the forum selection clauses was foreseeable to the Non-Signatory Defendants. *Id.* Finally, the Court will determine whether "the dispute itself . . . fall[s] within the scope of the forum selection clause." *Id.*

"Federal law controls the question of whether to enforce a forum selection clause." *Id.* at 58. "The interpretation of a forum selection clause is an analytically distinct concept from the enforceability of that clause." *Collins v. Mary Kay, Inc.*, 874 F.3d 176, 181 (3d Cir. 2017). To determine the scope of a forum selection clause the court must interpret the contract, and Third Circuit case law requires the court to use state law to determine whether the parties and claims are subject to the forum selection clause. *Id.* at 180-81. "State law, therefore, typically governs

whether . . . the [forum selection] clause applies to a non-signatory as an intended beneficiary or closely related party." *In re: McGraw-Hill*, 909 F.3d at 58.

Here, Defendants cite exclusively to opinions issued by federal courts and do not advance any arguments regarding the forum selection clause and its interpretation pursuant to New Jersey or Minnesota law. (*See generally*, Defs.' Transfer Br.) Plaintiff adopts the same approach. (*See generally*, Pl.'s Opp'n Br.) Neither party invokes the forum selection clause's provision stating that "[t]he laws of the State of Minnesota will govern the validity, construction and performance of" the Twin Cities Agreement and Chesapeake Agreement. (Twin Cities Agreement § 10(e).) In light of the parties' briefing, the Court will base its decision on general contract law principles. *See John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1074 (3d Cir. 1997).

### 1. *Non-Signatory Defendants are Bound by the Forum Selection Clause*

"Under traditional principles of contract law, non-signatories may be bound by a forum selection clause if . . . *they are closely related parties.*" *In re McGraw-Hill*, 909 F.3d at 59 (emphasis added). "In determining whether a non-signatory is closely related to a contract, courts consider the non-signatory's ownership of the signatory, its involvement in the negotiations, the relationship between the two parties and whether the non-signatory received a direct benefit from the agreement." *Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA*, 779 F.3d 214, 219 (3d Cir. 2015) (permitting non-signatory to enforce forum selection clause against signatory under the closely related parties doctrine). *See also, In re McGraw-Hill*, 909 F.3d at 63.

Defendants argue the Non-Signatory Defendants are closely related to Chesapeake's contract with Plaintiff because "Krieger is an indirect owner of Chesapeake, and he in turn is a direct[] or indirect owner of each of the other [n]on-[s]ignatory Defendants." (Defs.' Transfer Br. 12.) Furthermore, Defendants argue Plaintiff's claims against the Non-Signatory Defendants are

11

derivative of, directly related to, and predicated upon Angell Energy's and Chesapeake's conduct because Plaintiff's claims are limited to "an effort to hold [the non-signatories] jointly and severally liable for the same harm allegedly caused by signatories . . . ." (*See id.* at 13 (citations and quotations omitted).) In his opposition brief, Plaintiff does not directly address whether the Non-Signatory Defendants are closely related. (*See* Pl.'s Opp'n Br.)

The Court finds that Non-Signatory Defendants are closely related to the Chesapeake Agreement. Plaintiff alleges that "Krieger had complete domination and control over the finances, policies and business practices" of Non-Signatory Defendants. (Am. Compl. ¶ 114.) Plaintiff further alleges that Krieger used Non-Signatory Defendants, Chesapeake, and Angell Energy to "engage in [a] pattern of conduct to fraudulently escape debts owed to creditors, including Plaintiff . . . ." (*Id.* ¶ 116.) Because Plaintiff alleges that Krieger was an indirect owner and controlled Non-Signatory Defendants and Plaintiff's claims against Non-Signatory Defendants arise out of the Chesapeake Agreement, the Court finds that Non-Signatory Defendants are closely related.

### 2. *Enforcement was Foreseeable*

"Foreseeability is a prerequisite to applying the closely related parties doctrine[,]" and "before binding a non-signatory as a closely related party, [Third Circuit precedent] require[s] a finding that enforcement of the clause by or against the non-signatory would be foreseeable." *In re McGraw-Hill*, 909 F.3d at 64. "A foreseeability finding in the context of forum selection clauses must have some evidentiary basis, other than pure speculation, that the party sought to be bound had an awareness of the clause, its contents, and that it might be defensively invoked." *Id.* at 65. The foreseeability standard requires "the *actual forum* be foreseeable, and that there be some

evidentiary basis for such a finding." *Id.* (citing *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190 (3d Cir. 1983)).

The Court finds that the enforcement of the forum selection clauses by Non-Signatory Defendants was foreseeable by Plaintiff. Krieger avers that at the time of the sale of Twin Cities Power to Angell Energy, Apollo was "a subsidiary of Twin Cities Power Holdings . . . ." (Krieger Decl. ¶ 11.) He further states that "Apollo previously provided management and administrative services to energy trading companies owned by Tim Krieger and, for a brief period of time, to Angell [Energy]." (*Id.*) Accordingly, to the extent Apollo's provision of "management and administrative services" to Angell Energy was related to the employment agreements Angell Energy assumed pursuant to the purchase agreement between Twin Cities Power and Angell Energy (*id.* ¶ 13), the enforcement of the forum selection clause in the Twin Cities Agreement by Apollo was foreseeable to Plaintiff.

For the same reasons, the Court concludes that enforcement of the forum selection clause by Diversified was foreseeable in light of Apollo being a subsidiary of Diversified. (*Id.* ¶¶ 11, 23.) The Court further finds that the enforcement of the forum selection clause in the Chesapeake Agreement by Diversified was foreseeable because Chesapeake is a direct subsidiary of Diversified. (*Id.* ¶ 23.) The Court also finds that based on Plaintiff's allegations that (1) Pegasus was a successor entity to Angell Energy; (2) Krieger was the de facto owner of Pegasus; and (3) the offer of employment with Pegasus was "made . . . with the purpose of furthering the objective of avoiding Defendants' debts to Plaintiff for commissions . . . Plaintiff earned" pursuant to the Twin Cities and Chesapeake Agreements, the enforcement of the forum selection clauses in the agreements by Pegasus was foreseeable by Plaintiff. (Am. Compl. ¶¶ 74, 100, 103; *see also* Krieger Decl. ¶ 19 (stating that he became an owner of Pegasus in October 2017).)

### 3. *This Dispute is Within the Scope of the Forum Selection Clause*

"Whether or not a forum selection clause applies depends on what the specific clause at issue says." *John Wyeth & Brother Ltd. v. Cigna Int'l Corp.*, 119 F.3d 1070, 1075 (3d Cir. 1997). Thus, courts must look to the language of the forum selection clause to determine its scope. *Schering Corp. v. First Databank, Inc.*, 479 F. Supp. 2d 468, 470 (D.N.J. 2007).

"Courts in this District have found that clauses using the phrase 'relating to' indicate that the scope of the clause is subject to a broader interpretation" than those using the phrase "arising under." *Lasoff v. Amazon.com, Inc.*, No. 15-2886, 2016 WL 355076, at *3 (D.N.J. Jan. 28, 2016); *see Schering Corp.*, 479 F. Supp. 2d at 470; *Parts Geek, LLC v. U.S. Auto Parts Network, Inc.*, No. 09-5578, 2010 WL 1381005, at *6 (D.N.J. Apr. 1, 2010). In *Lasoff*, the Court was faced with a forum selection clause that provided: "[a]ny dispute with [the defendant] or its affiliates *relating in any way* to this Agreement or your use of the Services . . . shall be adjudicated in any state or federal court in King County, Washington, and you consent to exclusive jurisdiction and venue in such courts." *Lasoff*, 2016 WL 355076, at *3 (emphasis in original). The *Lasoff* plaintiff argued his claims did not arise out of the agreement between the parties, instead arguing he brought suit against the "[d]efendant for violations of state and federal law under rights that exist independent of any agreement." *Id.* The Court rejected this argument finding all of the plaintiff's claims related to the agreement even if they were based on federal and state law. *Id.*

As in *Lasoff*, Plaintiff's claims relate directly to the Twin Cities Agreement or the Chesapeake Agreement. Both forum selection clauses at issue state "[a]ny *legal proceeding related to* this agreement . . . ." (Twin Cities Employment Agreement, § 10(e) (emphasis added).) Plaintiff brings claims for unpaid commissions, salary, and unpaid time off that Plaintiff was

14

entitled to pursuant to the Twin Cities Agreement and Chesapeake Agreement. The Court, accordingly, finds the instant dispute is within the scope of the forum selection clauses.

Plaintiff insists that "the forum selection clause . . . is unenforceable as to the Plaintiff's Complaint because the [Defendants'] conduct . . . is not within the scope of the employment agreement." (Pl.'s Opp'n Br. 20.) Plaintiff disputes the validity of the forum selection clause in the Chesapeake Agreement because that agreement was part of "a larger pattern of fraudulent conduct by the Defendants which was undertaken in an effort to preclude potential creditors from recovering monies which were, and continue, to be due." (*Id.* at 23.)

A forum selection clause is "'prima facie valid' and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *Gen. Eng'g Corp. v. Martin Marietta Alumina, Inc.*, 783 F.2d 352, 356 (3d Cir. 1986) (quoting *M/S Bremen v. Zapatha Off-Shore Co.*, 407 U.S. 1, 10 (1972)). The Third Circuit has held that a forum selection clause should be enforced unless it is "the result of fraud or overreaching, enforcement would violate a strong public policy of the forum, or that enforcement would in the particular circumstances of the case result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable." *Hoffer v. InfoSpace.com, Inc.*, 102 F. Supp. 2d 556, 563 (D.N.J. 2000) (citing *Reynolds Pub., Inc. v. Graphics Fin. Grp., Ltd.*, 938 F. Supp. 256, 263 (D.N.J. 1996)); *see also M/S Bremen*, 407 U.S. at 15.

A forum selection clause, however, may be set aside "only where 'the inclusion of that clause in the contract was the product of fraud or coercion.'" *Danka Funding, L.L.C. v. Page, Scrantom, Sprouse, Tucker & Ford, P.C.*, 21 F. Supp. 2d 465, 470 (D.N.J. 1998) (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 n.14 (1974)); *see also Hoffer*, 102 F. Supp. 2d at 563. "It is insufficient, therefore, 'to allege that one was induced generally to enter into the contract

itself as a result of fraud.'" *Hoffer*, 102 F. Supp. 2d at 563-64 (quoting *Nat'l Micrographics Sys. v. Canon U.S.A.*, 825 F. Supp. 671, 675 (D.N.J. 1993)).

Plaintiff's arguments regarding the scope and validity of the forum selection clause are unavailing. Plaintiff does not argue or show he was fraudulently induced to agree to the forum selection clause or even fraudulently induced to enter the employment agreements. Plaintiff simply argues that Defendants engaged in a pattern of misconduct, one aspect of which was the Twin Peaks Agreement and Chesapeake Agreement. These arguments are insufficient to overcome the presumption that the forum selection clauses are *prima facie* valid and should be enforced. *See Danka Funding*, 21 F. Supp. 2d at 470; *Hoffer*, 102 F. Supp. 2d at 563.

For the foregoing reasons, the Court finds that the forum selection clause applies to Non-Signatory Defendants. As a result, the Court further finds that the forum selection clause is applicable and enforceable with respect to all Defendants.

### C. Public Interest Factors

The application of a valid forum selection clause to all of the parties collapses the court's analysis "into consideration of one factor: the public interest." *In re McGraw-Hill*, 909 F.3d at 69. The public interest factors are:

> (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases.

*Jumara*, 55 F.3d at 879-80 (internal citations omitted). There is no mechanical rule governing how a district court must balance these factors. *Lawrence v. Xerox Corp.*, 56 F. Supp. 2d 442, 450 (D.N.J. 1999) (citing *Lacey*, 862 F.2d at 43).

16

While there are six factors the Court may consider, the Court will only discuss two because they are ultimately dispositive. First, judgment in this action would be equally enforceable in Minnesota, as compared with New Jersey, especially considering Defendants are all organized under the laws of Minnesota. Second, the District of New Jersey is currently experiencing a judicial emergency and lacks six District Judges. Current Judicial Vacancies, United States Courts, (Aug. 15, 2019), https://www.uscourts.gov/judges-judgeships/judicial-vacancies/current-judicial-vacancies. The District of Minnesota, on the other hand, has a full complement of District Judges. This makes the relative administrative difficulty weigh heavily in favor of transfer. The remaining public interest factors are insufficient to overcome the weight of these two factors. The Court, accordingly, finds that the public interest factors weigh in favor of transfer.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Transfer to the District of Minnesota is granted. An order consistent with this Memorandum Opinion will be entered.

s/ Michael A. Shipp<br>
**MICHAEL A. SHIPP**<br>
**UNITED STATES DISTRICT JUDGE**